IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.**

GILBERT PATTERSON,
*On behalf of himself and those similarly situated*,

    Plaintiff,

  v.

PALO ALTO, INC.,
ROB ALVARADO,
LINDA ALVARADO,
DOE CORPORATION 1-10,
JOHN DOE 1-10,

    Defendants.

---

CLASS AND COLLECTIVE ACTION COMPLAINT

---

1.  Gilbert Patterson, on behalf of himself and similarly-situated individuals, brings this action against Defendants Palo Alto, Inc.; Rob Alvarado; Linda Alvarado; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.; New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-21, *et. Seq,* the New Mexico Payment of Wages Act, N.M. Stat. Ann. § 50-4-1, *et seq*. (together with the NMMWA, the "New Mexico wage laws"); the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq*., ("Colorado wage laws"); Virginia Minimum Wage Act ("VMWA"), the Virginia Wage Payment Act ("VWPA") (together "Virginia wage laws"); and unjust enrichment.

2.    Defendants operated Pizza Hut locations across the United States ("Defendants' Pizza Hut stores").

3.    Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' Pizza Hut stores.

4.    Defendants repeatedly and willfully violated the Fair Labor Standards Act, New Mexico wage laws, Colorado wage laws, and Virginia wage laws by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5.    All delivery drivers at the Defendants' Pizza Hut stores, including Plaintiff, have been subject to the same or similar employment policies and practices with respect to wages and reimbursement for expenses.

6.    Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers nationwide who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA by Defendants.

7.    Plaintiff also brings this action on behalf of himself and similarly situated current and former delivery drivers in New Mexico, Colorado, and Virginia pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the New Mexico wage laws, Colorado wage laws, Virginia wage laws and for unjust enrichment.

8.    Defendants have been unjustly enriched by their delivery drivers when the delivery drivers use their personal vehicles for the benefit of Defendants.

2

## Jurisdiction and Venue

9.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

10.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district.

## Parties

### Plaintiffs

### Gilbert Patterson

11.     Plaintiff Gilbert Patterson is a resident of New Mexico.

12.     Plaintiff was an "employee" of the Defendants as defined in the FLSA and New Mexico wage laws.

13.     Plaintiff has given written consent to join this action.

### Defendants

### Palo Alto, Inc.

14.     Defendant Palo Alto, Inc. is a domestic corporation, authorized to do business under the laws of the state of Colorado, New Mexico, California, and Virginia with its principal place of business at 924 W. Colfax Avenue, Suite 202, Denver, CO 80204.

15.     Upon information and belief, Palo Alto, Inc. owned and operated Pizza Hut Pizza stores in New Mexico, Colorado, California, Virginia and elsewhere until late 2021.

16.     Palo Alto, Inc. is owned and operated by Rob Alvarado.

17.     Linda Alvarado is Palo Alto, Inc.'s director.

3

18.     Palo Alto, Inc. was one of the entities that entered into a franchise agreement with Pizza Hut to operate the Defendants' Pizza Hut stores.

19.     From the beginning of the relevant time period until late 2021, Palo Alto, Inc. could command where, when, and how much labor was performed by the delivery drivers at the Defendants' Pizza Hut stores.

20.     From the beginning of the relevant time period until sometime in late 2021, Palo Alto, Inc. had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

21.     From the beginning of the relevant time period until sometime in late 2021, upon information and belief, Palo Alto, Inc. applied or caused to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

22.     From the beginning of the relevant time period until some time in late 2021, Palo Alto, Inc. had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

23.     From the beginning of the relevant time period until some time in late 2021, Palo Alto, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

24.     From the beginning of the relevant time period until some time in late 2021, Palo Alto, Inc. was an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

25.     From the beginning of the relevant time period until some time in late 2021, Palo Alto, Inc. had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

**Rob Alvarado**

26.     Defendant Rob Alvarado is the Chief Executive Officer of Palo Alto, Inc.

27.     Rob Alvarado is the President of Palo Alto, Inc.

28.     Rob Alvarado operated Pizza Hut stores in Colorado, California, New Mexico, and Virginia.

29.     Rob Alvarado operated Defendants' Pizza Hut stores until 2021.

30.     Rob Alvarado is individually liable to the delivery drivers at the Defendants' Pizza Hut stores under the definitions of "employer" set forth in the FLSA because he owned and operated the Defendants' Pizza Hut stores, served as President Chief Executive Officer of Palo Alto, Inc., ultimately controlled significant aspects of the Defendants' Pizza Hut stores' day-to-day functions, and ultimately controlled compensation and reimbursement of employees.  29 U.S.C. § 203(d).

31.     Rob Alvarado was the franchisee of the Defendants' Pizza Hut stores.

32.     At all relevant times, by virtue of his role as President and Chief Executive Officer of the Defendants' Pizza Hut stores, Rob Alvarado had financial control over the operations at each of the Defendants' Pizza Hut stores.

33.     At all relevant times, by virtue of his role as President and Chief Executive Officer of the Defendants' Pizza Hut stores, Rob Alvarado had a role in significant aspects of the Defendants' Pizza Hut stores' day to day operations.

34.     At all relevant times, by virtue of his role as President and Chief Executive Officer of the Defendants' Pizza Hut stores, Rob Alvarado had control over the Defendants' Pizza Hut stores' pay policies.

35.     At all relevant times, by virtue of his role as President and Chief Executive Officer of the Defendants' Pizza Hut stores, Rob Alvarado had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence of delivery driver pay.

36.     At all relevant times, by virtue of his role as President and Chief Executive Officer of the Defendants' Pizza Hut stores, Rob Alvarado had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Pizza Hut stores.

37.     At all relevant times, by virtue of his role as President and Chief Executive Officer of the Defendants' Pizza Hut stores, Rob Alvarado had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

38.     At all relevant times, by virtue of his role as President and Chief Executive Officer of the Defendants' Pizza Hut stores, Rob Alvarado had the power to transfer the assets and liabilities of the Defendant entities.

39.     At all relevant times, by virtue of his role as President and Chief Executive Officer of the Defendants' Pizza Hut stores, Rob Alvarado had the power to declare bankruptcy on behalf of the Defendant entities.

40.     At all relevant times, by virtue of his role as President and Chief Executive Officer of the Defendants' Pizza Hut stores, Rob Alvarado had the power to enter into contracts on behalf of each of the Defendants' Pizza Hut stores.

41.     At all relevant times, by virtue of his role as President and Chief Executive Officer of the Defendants' Pizza Hut stores, Rob Alvarado had the power to close, shut down, and/or sell each of the Defendants' Pizza Hut stores.

42.     At all relevant times, by virtue of his role as President and Chief Executive Officer of the Defendants' Pizza Hut stores, Rob Alvarado had authority over the overall direction of each of Defendants' Pizza Hut stores and was ultimately responsible for their operations.

43.     The Defendants' Pizza Hut stores functioned for Rob Alvarado's profit. Rob Alvarado had influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

**Linda Alvarado**

44.     Defendant Linda Alvarado is the Director of Palo Alto, Inc.

45.     Linda Alvarado operated Pizza Hut stores in Colorado, California, New Mexico, and Virginia.

46.     Linda Alvarado operated Defendants' Pizza Hut stores until 2021.

47.     Linda Alvarado is individually liable to the delivery drivers at the Defendants' Pizza Hut stores under the definitions of "employer" set forth in the FLSA because she directed the Defendants' Pizza Hut stores, served as Director of Palo Alto, Inc., ultimately controlled significant aspects of the Defendants' Pizza Hut stores' day-to-day functions, and ultimately controlled compensation and reimbursement of employees.  29 U.S.C. § 203(d).

48. At all relevant times, by virtue of her role as Director of the Defendants' Pizza Hut stores, Linda Alvarado had financial control over the operations at each of the Defendants' Pizza Hut stores.

49. At all relevant times, by virtue of her role as Director of the Defendants' Pizza Hut stores, Linda Alvarado had a role in significant aspects of the Defendants' Pizza Hut stores' day to day operations.

50. At all relevant times, by virtue of her role as Director of the Defendants' Pizza Hut stores, Linda Alvarado had control over the Defendants' Pizza Hut stores' pay policies.

51. At all relevant times, by virtue of her role as Director of the Defendants' Pizza Hut stores, Linda Alvarado had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence of delivery driver pay.

52. At all relevant times, by virtue of her role as Director of the Defendants' Pizza Hut stores, Linda Alvarado had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Pizza Hut stores.

53. At all relevant times, by virtue of her role as Director of the Defendants' Pizza Hut stores, Linda Alvarado had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

54. At all relevant times, by virtue of her role as Director of the Defendants' Pizza Hut stores, Linda Alvarado had the power to transfer the assets and liabilities of the Defendant entities.

55. At all relevant times, by virtue of her role as Director of the Defendants' Pizza Hut stores, Linda Alvarado had the power to declare bankruptcy on behalf of the Defendant entities.

56.    At all relevant times, by virtue of her role as Director of the Defendants' Pizza Hut stores, Linda Alvarado had the power to enter into contracts on behalf of each of the Defendants' Pizza Hut stores.

57.    At all relevant times, by virtue of her role as Director of the Defendants' Pizza Hut stores, Linda Alvarado had the power to close, shut down, and/or sell each of the Defendants' Pizza Hut stores.

58.    At all relevant times, by virtue of her role as Director of the Defendants' Pizza Hut stores, Linda Alvarado had authority over the overall direction of each of Defendants' Pizza Hut stores and was ultimately responsible for their operations.

59.    The Defendants' Pizza Hut stores functioned for Linda Alvarado's profit. Linda Alvarado had influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

**Doe Corporation 1-10**

60.    Upon information and belief, Defendants own, operate, and control other entities and/or corporations that also comprise part of the Defendants' Pizza Hut stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

61.    Upon information and belief, Rob and Linda Alvarado owned and/or operated in whole or in part, a number of other entities that made up part of the Defendants' Pizza Hut stores operation.

62.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

9

**John Doe 1-10**

63.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

64.     Upon information and belief, Rob and Linda Alvarado had entered into co-owner relationships with a number of their managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA.

65.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## Facts

### Class-wide Factual Allegations

66.     During all relevant times, Defendants have operated the Defendants' Pizza Hut stores.

67.     Plaintiff, and the similarly situated persons Plaintiff seek to represent, are current and former delivery drivers at the Defendants' Pizza Hut stores.

68.     All delivery drivers employed at the Defendants' Pizza Hut stores over the last three years have had essentially the same job duties.

69.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Pizza Hut stores cleaning up dishes, sweeping, making boxes, filling the ice container, and completing other duties inside the restaurant, as necessary.

70.    Plaintiff and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked on the road for Defendants' Pizza Hut stores.

71.    The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

72.    Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

73.    The delivery drivers at the Defendants' Pizza Hut stores work "dual jobs."

74.    Defendants require delivery drivers at Defendants' Pizza Hut stores to provide cars to use while completing deliveries for Defendants.

75.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

76.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

77.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

11

78.    Defendants require delivery drivers at Defendants' Pizza Hut stores to provide cell phones to use while completing deliveries for Defendants.

79.    Defendants require delivery drivers to maintain and pay for operable cell phones to use in delivering Defendants' pizza and other food items.

80.    The Defendants' Pizza Hut stores do not reimburse the delivery drivers' cell phone expenses.

81.    The Defendants' Pizza Hut stores do not track or record the delivery drivers' cell phone expenses.

82.    The Defendants' Pizza Hut stores reimburse their delivery drivers based on a flat rate per delivery.

83.    Defendants' reimbursement payments have no connection to the actual expenses incurred by the delivery drivers.

84.    The Defendants' Pizza Hut stores do not track or record the delivery drivers' actual expenses.

85.    The Defendants' Pizza Hut stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

86.    The Defendants' Pizza Hut stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

87.    The Defendants' Pizza Hut stores do not reimburse their delivery drivers for the actual expenses the delivery drivers incur.

88.    The Defendants' Pizza Hut stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

12

89.    The Defendants' Pizza Hut stores do not reasonably approximate the delivery drivers' expenses.

90.    Plaintiff and similarly situated delivery drivers typically average 4 miles per round-trip delivery.

91.    The Defendants' Pizza Hut stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

92.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a.    2017 53.5 cents/mile
b.    2018 54.5 cents/mile
c.    2019 58 cents/mile
d.    2020: 57.5 cents/mile
e.    2021: 56 cents/mile
f.    2022: 58.5 cents/mile
g.    2022: 62.5 cents/mile
h.    2023: 65.5 cents/mile

93.    The delivery drivers at the Defendants' Pizza Hut stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

94.    The delivery drivers at Defendants' Pizza Hut stores advance business expenses, interest free, to Defendants when they provide cars to use at work.

95.    Defendants benefit from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

96.    Defendants benefit from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

13

97.    Defendants benefit from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

98.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA, New Mexico, Colorado, and Virginia law.

99.    Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Pizza Hut stores.

100.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

101.    Defendants have failed to properly take a tip credit from Plaintiff's wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

102.    Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R.§ 531.59.

103.    Defendants have willfully failed to pay federal, New Mexico, Colorado, and Virginia state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Pizza Hut stores, have taken unauthorized deductions from the delivery drivers' wages, have failed to pay the delivery drivers all wages due, and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

14

104.    Defendants have received a benefit by virtue of the delivery drivers using their own cars to complete deliveries – they do not have to incur the expense themselves.

105.    The delivery drivers have provided a benefit to Defendants in the form of saved automobile costs.

106.    It is unjust for Defendants to retain the benefit conferred on them by their delivery drivers by reimbursing only a portion of the business-related costs incurred by the delivery drivers.

**Plaintiff's Individual Factual Allegations**

107.    Plaintiff has worked at the Pizza Hut store located in Albuquerque, New Mexico from 2017 through 2021 when the store sold.

108.    Plaintiff was paid minimum wage minus a tip credit for all hours worked while delivering.

109.    When Plaintiff was not delivering food, he worked inside the restaurant. His work inside the restaurant included stocking coolers, sweeping, and completing other duties inside the restaurant as necessary.

110.    Plaintiff worked dual jobs.

111.    Plaintiff's inside duties were not related to his delivery duties.

112.    Plaintiff was paid New Mexico minimum wage minus a tip credit for the hours he works inside the store.

113.    Plaintiff was required to use his own car to deliver pizzas.

114.    Plaintiff was required to use his own cell phone when delivering pizzas.

115.    Plaintiff was reimbursed $1.05 per delivery.

15

116.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

117.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

118.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

119.    Defendants did not track the actual expenses incurred by Plaintiff.

120.    Defendants did not ask Plaintiff to provide receipts of the expenses he incurred while delivering pizzas for Defendants.

121.    Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

122.    Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

123.    Defendants did not reimburse Plaintiff based on a reasonable approximation of his expenses.

124.    In 2021, for example, the IRS business mileage reimbursement was $.56 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Defendants' policy reimbursed

Plaintiff $.26 per mile. At the IRS standard business mileage reimbursement rate, Defendants under-reimbursed Plaintiff by $.30 ($.56-$.26) per mile. Considering Plaintiff's estimate of 4 miles per delivery, Defendants under-reimbursed him $1.20 per delivery ($.30 x 4 miles), and $4.80 per hour (4 deliveries per hour).

125.    Defendants have failed to properly inform Plaintiff of the requirements for taking a tip credit.

126.    Defendants have failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants take more of a tip credit than they informed Plaintiff they would be taking.

127.    Defendants have failed to pay Plaintiff minimum wage as required by law.

128.    Defendants engage in a continuing course of conduct in failing to pay minimum wage as required by law.

### Collective Action Allegations

129.    Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

130.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and

failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

131.    Defendants' unlawful conduct is pursuant to a company policy or practice.

132.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

133.    Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiff and other delivery drivers that they would pay.

134.    Defendants are aware or should have been aware that federal law requires them to meet certain requirements for taking a tip credit from the wages of their employees.

135.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

136.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

137.    The FLSA Collective members are readily identifiable and ascertainable.

138.    In recognition of the services Plaintiff have rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Class Action Allegations

139.    Plaintiff brings the Second and Third Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the State of New Mexico between the date the Palo Alto

Defendants first implemented a compensation and reimbursement policy that requires delivery drivers to use their own cars to make deliveries and reimburses delivery drivers at a rate less than the IRS standard business mileage rate to the date of final judgment in this matter ("New Mexico Wage Class").

140.    Plaintiff brings the Fourth Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

All current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants in New Mexico, between the date four years prior to the filing of the original complaint and the date of final judgment in this matter (the "New Mexico Unjust Enrichment Class")

141.    Plaintiff brings the Fifth, Sixth, and Seventh Counts, pursuant to Fed. R. Civ. P. 23, on behalf of himself and:

All similarly situated current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants in Colorado, during the six years prior to the filing of this Class Action Complaint and the date of final judgment in this matter (the "Colorado Wage Class")

142.    The Colorado Wage Class asserts CMWA and CWCA claims on behalf of delivery drivers employed at the Defendants Pizza Hut stores in Colorado from the date three years prior to the filing of the original complaint through the date of final judgment.

143.    Plaintiff brings the Eighth Count, pursuant to Fed. R. Civ. P. 23, on behalf of himself and:

All current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants in Virginia, between the date three years prior to the filing of the original complaint and the date of final judgment in this matter (the "Virginia Unjust Enrichment Class") (together with the "New Mexico Wage Class", "New Mexico Unjust Enrichment Class", "Colorado Wage Class", the "Rule 23 Classes")

144.    Excluded from the Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Classes.

145.    The number and identity of the Rule 23 Classes are ascertainable from Defendants' records.

146.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursement paid for each Rule 23 Class Member are determinable from Defendants' records.

147.    All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

148.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

149.    Notice can be provided by means permissible under Rule 23.

150.    The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

151.    There are more than 50 Rule 23 Class Members in all Rule 23 Classes.

152.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Rule 23 Classes, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Classes in separate actions.

153.    Plaintiff and the members in the Rule 23 Classes are subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and failing to reimburse for expenses.

154.    Plaintiff and the members in the Rule 23 Classes sustain similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

155.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Classes and has no interests antagonistic to the members in the Rule 23 Classes.

156.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

157.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

158.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

159.    Common questions of law and fact exist as to the Rule 23 Classes that predominate over any questions only affecting Plaintiff and the Rule 23 Classes members individually and include, but are not limited to:

a. Whether Plaintiff and Rule 23 Wage Class members are subject to a common expense reimbursement policy that result in wages to drop below legally allowable minimum wage;

b. Whether Plaintiff and the Rule 23 Wage Class members are subject to a policy that require them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c. Whether Plaintiff and the Rule 23 Wage Class members incur expenses for the benefit of Defendants in the course of completing deliveries;

d. Whether Defendants reimburse Plaintiff and Rule 23 Wage Class members for their actual expenses;

e. Whether Defendants reimburse Plaintiff and the Rule 23 Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f. Whether Defendants reimburse Plaintiff and the Rule 23 Wage Class members based on a reasonable approximation of the expenses they incurred;

g. Whether Defendants properly reimburse Plaintiff and the Rule 23 Wage Class members;

h. Whether Defendants took unlawful deductions from the wages of Plaintiff and the Rule 23 Wage Class members ;

i. Whether Defendants timely paid Plaintiff and the Rule 23 Wage Class members all the wages they were due in a timely manner;

j. Whether Plaintiff and the Rule 23 Wage Class members were properly informed of the requirements for taking a tip credit;

k. Whether Plaintiff and the Rule 23 Wage Class members are actually paid the wage rate they were promised by Defendants;

22

l. Whether Defendants engaged in a continuing course of conduct under N.M. Stat. Ann. § 50-4-32.

m. The nature and extent of class-wide injury and the measure of damages for those injuries.

160. Common questions of law and fact exist as to the New Mexico Unjust Enrichment Class and Virginia Unjust Enrichment Class that predominate over any questions only affecting Plaintiff, the New Mexico Unjust Enrichment Class, and the Virginia Unjust Enrichment Class members individually and include, but are not limited to:

a. Whether Plaintiff, the New Mexico Unjust Enrichment Class, and the Virginia Unjust Enrichment Class members are subject to a common policy that requires them to provide cars to complete deliveries for Defendants;

b. Whether Plaintiff, the New Mexico Unjust Enrichment Class, and the Virginia Unjust Enrichment Class members are subject to a common automobile expense reimbursement policy;

c. Whether Plaintiff, the New Mexico Unjust Enrichment Class, and the Virginia Unjust Enrichment Class members are subject to a common policy that requires them to provide cellphones to use when completing deliveries for Defendants;

d. Whether Plaintiff, the New Mexico Unjust Enrichment Class, and the Virginia Unjust Enrichment Class members are subject to a common cellphone expense reimbursement policy;

e. Whether Plaintiff, the New Mexico Unjust Enrichment Class, and the Virginia Unjust Enrichment Class incurs expenses for the benefit of Defendants in the course of completing deliveries;

f. Whether Defendants avoid business expenses they would otherwise be required to cover but for Plaintiff, the New Mexico Unjust Enrichment Class, and the Virginia Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

g. How much it would cost Defendants to operate their business but for Plaintiff, the New Mexico Unjust Enrichment Class, and the Virginia Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

h. Whether Plaintiff, the New Mexico Unjust Enrichment Class, and the Virginia Unjust Enrichment Class confer a benefit on Defendants that Defendants are aware of;

i. Whether Defendants accept the benefits conferred on them by Plaintiff, the New Mexico Unjust Enrichment Class, and the Virginia Unjust Enrichment Class;

j. Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff, the New Mexico Unjust Enrichment Class, and the Virginia Unjust Enrichment Class without compensating for it;

k. The nature and extent of class-wide injury and the measure of damages for those injuries.

161. In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Classes, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wage - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

162. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

163. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

164. Defendants fail to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective are paid a wage rate lower than Defendants informed them that they would be paid.

24

165.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

166.    Defendants required and continue to require Plaintiff and the FLSA Collective to work in a non-tipped capacity while being paid a tipped wage rate.

167.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

168.    Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

169.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Unlawful Deductions from Wages – N.M. Stat. Ann. 50-4-2**
**(On Behalf of Plaintiff and the New Mexico Wage Class)**

170.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

171.    Each Defendant has at all relevant times been an "employer" of Plaintiff and the New Mexico Wage Class members within the meaning of the New Mexico minimum wage law. §50-4-2.

172.    New Mexico law prohibits employers from taking any deductions from the wages of employees unless those deductions are lawful and/or authorized in a written contract of hiring entered into at the time of hiring by the employer and employee.

173.    Defendants took unauthorized deductions from delivery drivers' wages in the form of unreimbursed vehicle expenses.

174.    Plaintiff and similarly situated delivery drivers did not authorize Defendants to take deductions from their wages in the form of unreimbursed vehicle expenses.

175.    Defendants conduct and practices, as described herein, constitute a continuing course of conduct.

176.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and the New Mexico Wage Class members for unlawful deductions, additional damages in an amount equal to twice the unpaid or underpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest.

**Count 3**
**Untimely Payment of Wages – N.M. Stat. Ann. 50-4-2**
**(On Behalf of Plaintiff and the New Mexico Wage Class)**

177.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

178.    Each Defendant has at all relevant times been an "employer" of Plaintiff and the New Mexico Wage Class members within the meaning of the New Mexico minimum wage law. §50-4-2.

179.    New Mexico law requires that employers pay wages in full to their employees on regular paydays, not more than 16 days apart, with payment for services rendered during the first 15 days of a month being paid in full no later than the 25th of the month, and payment for services rendered from the 16th to the end of the month being paid in full no later than the 10th of the following month.

180.    By failing to properly reimburse for vehicle expenses, Defendants failed to pay the delivery drivers their wages in full on regular paydays.

181.    By reason of the acts alleged herein, Defendants failed to timely pay all wages due to Plaintiff and the New Mexico Wage Class.

182.    Defendants conduct and practices, as described herein, constitute a continuing course of conduct.

By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff and the New Mexico Wage Class members for unpaid wages, additional damages in an amount equal to twice the unpaid or underpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest.

**Count 4**
**New Mexico Unjust Enrichment**
**(On Behalf of Plaintiff and the New Mexico Unjust Enrichment Class)**

183.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

184.    The delivery drivers have conferred a benefit on Defendants by using their own cars to work for Defendants.

185.    Defendants are aware of and have accepted the benefit conferred on them by delivery drives.

186.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the delivery drivers without commensurate compensation.

187.    Plaintiff and the delivery drivers are entitled to equitable restitution of the benefits they conferred on Defendants.

**Count 5**
**Failure to Pay Minimum Wages—C.R.S. 8-6-101, *et seq*. and 7 CCR 1103-1:1, et seq.,**
**(On Behalf of the Colorado Wage Class)**

188.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

189.    Defendants have at all times been an "employer" of all delivery drivers within the meaning of the CMWA.

190.    Defendants failed to pay the delivery drivers all minimum wages owed.

191.    Defendants took unauthorized deductions from the wages of the delivery drivers.

192.    Defendants conduct and practices, as described herein, were willful and intentional.

193.    By reason of the unlawful acts alleged herein, Defendants are liable to the delivery drivers for unpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

**Count 6**
**Colorado Wage Claim Act—C.R.S. 8-4-101, *et seq*.**
**(On Behalf of the Colorado Wage Class)**

194.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

195.    The Defendant entities have at all times been an "employer" of the delivery drivers within the meaning of the CWCA.

196.    During all or some of the relevant time period, Defendants have each been an "employer" of the delivery drivers with the meaning of the CWCA.

197.    Defendants failed to pay the delivery drivers in a timely manner as required by C.R.S. 8-4-103(1).

198.    Defendants have taken unauthorized deductions from the wages of the delivery drivers by failing to properly reimburse for delivery-related expenses. *See* C.R.S. 8-4-105.

199.    Defendants conduct and practices, as described herein, were willful and intentional.

200.    By reason of the unlawful acts alleged herein, Defendants are liable to the delivery drivers for unpaid wages, unreimbursed expenses, liquidated damages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

### Count 7
### Colorado Unjust Enrichment
### (On Behalf of the Colorado Wage Class)

201.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

202.    The delivery drivers have conferred a benefit on Defendants by using their own cars to work for Defendants.

203.    Defendants are aware of and have accepted the benefit conferred on them by delivery drivers.

204.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the delivery drivers without commensurate compensation.

205.    The delivery drivers are entitled to equitable restitution of all unreimbursed expenses, unauthorized deductions, and unpaid wages.

**Count 8**
**Virginia Unjust Enrichment**
**(On Behalf of the Virginia Unjust Enrichment Class)**

206.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

207.    The Virginia Rule 23 Unjust Enrichment Class members have conferred a benefit on Defendants by using their own cars and related equipment to perform work for Defendants.

208.    Defendants are aware of and have accepted the benefit conferred on them by the Virginia Unjust Enrichment Class members.

209.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Virginia Unjust Enrichment Class members without commensurate compensation.

210.    The Virginia Unjust Enrichment Class members are entitled to equitable restitution of the benefits they have conferred on Defendants within the 3 years preceding the filing of this complaint.

**WHEREFORE,** Plaintiff Gilbert Patterson prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class,

apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.      Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, New Mexico state law, Colorado state law, and Virginia state law.

D.      Designation of Plaintiff as representative of the Rule 23 Classes, and counsel of record as Class Counsel.

E.      Declaratory judgment that the practices complained of herein are unlawful under the New Mexico Minimum Wage Act.

F.      An award of unpaid minimum wages, unreimbursed expenses, unlawful deductions, and untimely paid wages, due under the FLSA, New Mexico wage laws, Colorado wage laws, and Virginia wage laws.

G.      An award of restitution for unjust enrichment.

H.      Damages in the amount of triple unpaid wages under the VWPA.

I.      Interest at 8% of unpaid wages.

J.      Liquidated damages under the FLSA.

K.      An award of prejudgment and post-judgment interest.

L.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

M.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Andrew Kimble*
Andrew R. Biller
Andrew P. Kimble
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
513-202-0710 (Phone)
614-340-4620 (Fax)
*abiller@billerkimble.com*
*akimble@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

<u>/s/ Andrew Kimble</u>
Andrew Kimble